## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**WINSTON DEMOND WESTLEY**　　　　　　　　　　**CIVIL ACTION NO.**

**VERSUS**　　　　　　　　　　　　　　　　　　　　**19-170-BAJ-SDJ**

**JASON KENT, ET AL.**

### NOTICE

　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

　　In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

　　ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

　　Signed in Baton Rouge, Louisiana, on March 7, 2022.

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Scott D. Johnson*
　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　**SCOTT D. JOHNSON**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WINSTON DEMOND WESTLEY**                               **CIVIL ACTION NO.**

**VERSUS**                                                              **19-170-BAJ-SDJ**

**JASON KENT, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is an application for writ of habeas corpus[1] brought pursuant to 28 U.S.C. § 2254, filed by Winston Demond Westley. It is recommended that the case be dismissed. There is no need for oral argument or for an evidentiary hearing.

**I.      Procedural History**

This petition concerns guilty pleas entered by Petitioner in four separate cases, 4-10-228, 9-9-579, 3-8-205, and 3-8-206; the guilty pleas were entered simultaneously on March 15, 2011.[2] Petitioner was supposed to be sentenced on July 11, 2011, but Petitioner was released from jail[3] and was located in Georgia after he did not appear for his sentencing, despite the fact that he did not have permission to leave the state of Louisiana. Sentencing was then held on December 14, 2011, and Petitioner was sentenced to a total of 50 years on seven different counts to run consecutively: ten years for forgery, ten years for felony theft over $500.00, 28 years (7 per count) for issuing worthless checks, and two years for felony theft between $300.00 and $500.00.[4]

---

[1] R. Doc. 1. The Court notes that some of the pertinent information discussed herein, such as the bills for certain offenses, were not provided in the electronic record but are contained in the courtesy copy filed by the Clerk for Court for East Baton Rouge.
[2] R. Docs. 14, pp. 103-114; 14-3, pp. 48, 50, 116; 14-2, pp. 18-33.
[3] It is unclear how Petitioner was able to get out of jail.
[4] R. Doc. 14-3, pp. 152-153.

Petitioner filed a Motion to Reconsider Sentence, which was denied.[5] Petitioner timely appealed to the First Circuit Court of Appeal.[6] After the appeal was denied on February 15, 2013, Petitioner did not seek further direct review.[7] On February 18, 2014, Petitioner filed a counseled application for post-conviction relief.[8] The trial court dismissed Petitioner's final post-conviction relief claim on September 28, 2016.[9] Petitioner then applied for supervisory writs with the First Circuit[10] and subsequently the Louisiana Supreme Court, which denied writs on February 18, 2019.[11] This Petition followed.

## II.    The Petition Is Timely

Respondent argues, and Petitioner concedes, that his Petition is untimely, but after a thorough, independent review, it is clear that the Petition is timely, as it was filed on the 365th untolled day. Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review.[12] If a petitioner stops the direct appeal process before proceeding through all available state courts, "the conviction becomes final when the time for seeking further direct review in the state court expires."[13] The time during which a "properly filed" application for state post-conviction or other collateral review is "pending" in the state courts is not be counted toward the one-year limitations period.[14] Conversely, any time

---

[5] R. Doc. 14-2, p. 108.
[6] R. Doc. 14, pp. 90-102.
[7] *State v. Westley*, 2012-0956, 2013 WL 595764, at *3 (La. 1st Cir. 2/15/2013); *State v. Westley*, 2012-0954, 2013 WL 595717 (La. App. 1st Cir. 2/15/13); *State v. Westley*, 2012-0955, 2013 WL 595719 (La. App. 1st Cir. 2/15/13); *State v. Westley*, 2012-0957, 2013 WL 595767 (La. App. 1st Cir. 2/15/13).
[8] R. Docs. 14-1, pp. 186-190; 14-2, pp. 1-10.
[9] R. Doc. 14, p. 19. Only one claim remained at that point as the other claims had been previously dismissed.
[10] *See* R. Doc. 14-1, pp. 90-93.
[11] R. Doc. 14-1, p. 94.
[12] 28 U.S.C. § 2244(d)(1)(A).
[13] *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).
[14] 28 U.S.C. § 2244(d)(2).

during which there are no properly-filed, post-conviction or collateral review proceedings pending before the state courts does count toward the passage of the one-year period. A state post-conviction relief application is considered "pending" (1) while it is before a state court for review; and (2) during the time authorized to file a timely application for further review at the next level of state consideration (thirty days in the State of Louisiana, unless an *allowable* extension is granted).[15]

Petitioner was sentenced on each of the counts on December 14, 2011. Direct review concluded on February 15, 2013, and Petitioner's conviction became final by operation of law on March 18, 2013.[16] On February 18, 2014, Petitioner filed an application for post-conviction relief. The Court is required to count all the time between March 18, 2013, and February 18, 2014, against the time clock,[17] but March 18, 2013, when the conviction became final is not counted, and February 18, 2014, when an application for postconviction relief was properly filed is also not counted.[18] Thus, at the time Petitioner filed his application for post-conviction relief in the state court, 336 days of untolled time had elapsed, leaving 29 days to file an application for federal habeas relief. From February 18, 2014, through February 18, 2019, Petitioner had a properly-filed application for post-conviction relief, which tolled the time for his federal habeas petition. Importantly, time was tolled *through* the date the Louisiana Supreme Court denied writs, February

---

[15] *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).
[16] Respondent improperly identified March 1, 2013, as the date that the conviction became final; this is incorrect. An application "to review a judgment of the court of appeal either after an appeal to that court … or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal." Louisiana Supreme Court Rule X, § 5(a). Accordingly, because notice of the denial of the appeal was mailed on February 15, 2013, Petitioner had until March 17, 2013, to seek review. However, this date fell on a Sunday, which is a legal holiday, and accordingly, Petitioner had until the following day to file.
[17] *See Gray v. Wingham*, 2019 WL 1271040, at *3 (M.D. La. March 1, 2019).
[18] *Brown v. Vannoy*, No. 17-314, 2021 WL 4074793, at *2 (M.D. La. Aug. 6, 2021), *report and recommendation adopted*, No. 17-0314, 2021 WL 4066989 (M.D. La. Sept. 7, 2021) (including the last day a petitioner has to file with a court on direct review or the day the application for postconviction relief is filed is incorrect).

3

18, 2019, and the clock again began to tick on February 19, 2019.[19]  Petitioner then filed the originally filed Petition in this Court on March 20, 2019—the 365th day—rendering the filing timely.[20]

### III.    Petitioner Is Nevertheless Not Entitled to Relief

Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[21]

With these standards in mind, the Court will discuss each of Petitioner's arguments in turn. Petitioner's arguments may be sorted into three categories: (1) Petitioner received ineffective assistance of counsel at the plea stage; (2) the guilty pleas were unknowing;[22] and (3) the sentences imposed are so excessive that they violate the Eighth Amendment.

### a.    Counsel Was Not Ineffective

---

[19] *See Leonard v. Deville*, 960 F.3d 164, 173 (5th Cir. 2020) (time was tolled through the date the writ was ultimately denied by the Louisiana Supreme Court).

[20] R. Doc. 1. Respondent has used the date the Petition was docketed in this Court as the date of filing, but this method of dating is incorrect. The "prison mailbox rule" was adopted by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).  Accordingly, this Report uses the date the Petition was signed and dated as the date of filing, rather than the date the filing was received by the Court.  Additionally, the Court has found no support for the assertion that the original filing of the habeas petition should not be considered the date of filing and, rather, the date the counseled petition was filed should be considered the date of filing.  Even the cases cited by Respondent do not support this assertion.

[21] *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

[22] Petitioner makes two arguments regarding the unknowing nature of the guilty plea: (1) Petitioner was inadequately informed of the sentencing range he faced; and (2) he was not adequately informed of the facts and circumstances of the guilty plea to a felony charge for issuing a worthless check to the City of Baton Rouge in case 09-09-0579. R. Doc. 5, p. 12.  These arguments will be discussed together.

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*:[23]

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

The test announced in *Strickland* for evaluating ineffective assistance of counsel claims applies to guilty plea challenges based on ineffective assistance of counsel.[24] However, in the context of a guilty plea, proving *Strickland's* prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[25] As described below, there was neither ineffective assistance nor prejudice.

The only ineffective assistance of counsel claims before this Court are the allegations that Scott Collier was ineffective for his alleged failure to investigate Petitioner's criminal record, believing Petitioner only had one prior felony conviction, when he, in fact, had three and for Collier's failure to protest Petitioner's pleading guilty to a felony that was arguably a misdemeanor.[26]

With respect to both allegations of ineffective assistance of counsel, the state trial court found that Petitioner could not demonstrate ineffectiveness or prejudice under *Strickland* because

---

[23] 466 U.S. 668, 687 (1984).
[24] *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).
[25] *Id.* at 59.
[26] R. Doc. 5, p. 17. Though Petitioner tries to couch his claim regarding pleading to a felony that should have been a misdemeanor as a claim regarding the unknowing nature of his plea, Petitioner was advised he was pleading to a felony count and that the punishment for same was up to ten years imprisonment, so this is in fact a claim of ineffective assistance of counsel and will be discussed accordingly. As discussed below, the fact that Petitioner pled guilty to a felony instead of a misdemeanor is a jurisdictional defect that has now been waived, which is likely why Petitioner is trying to frame the issue as one involving the knowing nature of the plea.

5

counsel was able to secure a very favorable plea agreement with the State after negotiations and because the sentencing fell within the guidelines.[27] The Louisiana First Circuit Court of Appeals also noted that "in exchange for his guilty pleas…several…charges [were] dismissed, [and] he avoided possible exposure to enhanced sentences as a third or fourth-felony habitual offender under La. R.S. 15:529.1," which would have exposed Petitioner to a life sentence.[28]

      This Court must accord the state habeas court's findings a presumption of correctness, and Petitioner has failed to rebut this presumption by clear and convincing evidence. Nor has Petitioner presented legal argument or evidence in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland*.[29] Accordingly, Petitioner is not entitled to relief.

      With respect to the failure of counsel to object to the misdemeanor billed as a felony, any motion to quash the bill or request to change the charge would have been futile because the factual predicate for four felony counts of issuing worthless checks existed, and the failure to file futile motions is not ineffective assistance.[30] As pointed out by the State in the state habeas proceedings and supported by the evidence before this Court, Petitioner had, in fact, issued four worthless checks exceeding $500.00, rendering those counts felony counts; those worthless checks included two issued to Simple Simon Tire and two issued to Home Furniture.[31] Petitioner had also issued a worthless check to the City of Baton Rouge for less than $100.00, which was a misdemeanor.[32]

---

[27] R. Doc. 14, p. 22-25. This Court notes that, even if Petitioner had been charged with a misdemeanor with a potential six-month maximum penalty rather than a felony with a potential maximum 10-year penalty, he still would have faced up to 52.5 years of imprisonment for all charges and counts and was instead sentenced below that, and that is assuming the state would have still agreed to dismiss the other felony and misdemeanor charges.
[28] *State v. Westley*, 2012-0956, 2013 WL 595764, at *3 (La. 1st Cir. 2/15/2013).
[29] 28 U.S.C. § 2254(d).
[30] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (providing counsel is not required to make futile motions or frivolous objections).
[31] R. Docs. 14-4, p. 7; 14-3, pp. 100 & 107. Petitioner issued two separate checks to Home Furniture for over $500.00, two separate checks to Simple Simon Tire for over $500.00, and one check to the City of Baton Rouge for under $100.00. R. Doc. 14-3, p. 107.
[32] R. Doc. 14-4, p. 107.

The bill, however, charged Petitioner with four felony counts of issuing worthless checks, which included two counts of issuing worthless checks exceeding $500.00 to Simple Simon, one check to Home Furniture exceeding $500.00, and one check exceeding $500.00 to the City of Baton Rouge. The fact that the bill included the check to the City of Baton Rouge rather than the second check to Home Furniture, which was for over $500.00 is of no consequence because the bill could have been corrected to include the second proper check to Home Furniture because, pursuant to Louisiana law, the district attorney could have amended the bill at any time to correctly list the fourth felony charge of issuing worthless checks and to additionally list the misdemeanor count.[33] Further, the trial judge may accept a defendant's knowing and voluntary guilty plea that is not responsive to that charged in the bill of information.[34]

This Court also does not find any support for the assertion that Petitioner was prejudiced by counsel's performance. Overall, Petitioner was charged with one count of felony forgery;[35] two counts of felony theft of $500.00 or more;[36] four felony counts of issuing worthless checks, as described above;[37] one count of felony theft for theft between $300.00 and $499.99;[38] and an additional charge of felony theft, as well as misdemeanor traffic violations.[39] Through plea negotiations, Petitioner's counsel was able to negotiate for the dismissal of one felony charge of

---

[33] It appears that any request to correct the bill would have been an exercise in futility because the factual predicate for another felony offense existed. The name of the entity to whom the check was written was merely incorrect. Counsel is not ineffective for filing meritless motions.
[34] *See State v. Jackson*, 916 So.2d 1015, 1023 (La. 11/29/05) (the "trial judge is not without jurisdiction to accept a defendant's knowing and voluntary guilty plea simply because the plea is not responsive to that charged in the bill of information and the district attorney has not amended the bill to conform to the plea."); *Shelton v. Kent*, 2021 WL 6285930, at *5 (W.D. La. Nov. 15, 2021).
[35] *See* Docket No. 04-10-228.
[36] *See* Docket Nos. 03-08-205 & 03-08-206.
[37] *See* Docket No. 09-09-0579.
[38] *See* Docket No. 03-08-206.
[39] The dockets for these charges were 8-08-306 and 7-8-881, respectively. The bills and related information for these charges are not in the record because, as part of the plea deal, they were dismissed entirely. The information gleaned from the record in this Court indicates the misdemeanors of reckless operation, expired inspection tag, driving under suspension, and no auto insurance.

7

felony theft in bill 8-08-306 and misdemeanor charges charged under bill 7-8-881.[40] The state also agreed to forego seeking sentencing based upon the fact that Petitioner was a habitual offender, which, if sought, could have subjected Petitioner to a minimum of 20 years imprisonment for each of the felonies he was charged with.[41] As concluded by the state courts, considering the very favorable plea deal obtained by counsel for Petitioner, this Court also cannot find that Petitioner was prejudiced by counsel's performance.

Furthermore, even if this Court found that the state trial court did incorrectly apply *Strickland*, the outcome would be the same because the Fifth Circuit has held that, once a guilty plea has been entered, all non-jurisdictional defects in the proceeding are waived. This includes all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the plea.[42] Thus, to the extent Petitioner complains that counsel failed to adequately investigate the prior felonies and failed to object to the misdemeanor charged as a felony, the claims are non-jurisdictional and are waived by the plea.[43]

> [O]nce a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the *Boykin* colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept.[44]

---

[40] R. Doc. 14-3, pp. 59-61. The state also did not seek charges for the actual misdemeanor charge of issuing worthless checks to the City of Baton Rouge.
[41] La. R.S. 15:529.1.
[42] *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.1983); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir.1981).
[43] *See Walker v. Thaler*, 2012 WL 426639, at *6 (N.D. Tex. Feb. 10, 2012) ("to the extent petitioner complains that counsel failed to familiarize himself with the law of the case, investigate the prior felonies used to enhance petitioner's sentence, and file pretrial motions, matters unrelated to the voluntariness of his plea, the claims are nonjurisdictional and are waived by the plea."). *See also Hayes v. Smith*, 447 F.2d 488 (5th Cir. 1971) (a guilty plea made knowingly and voluntarily is an effective waiver of all prior non-jurisdictional defects); *Lapell v. Cain*, 04-742, 2005 WL 3541069, at *7 (E.D. La. Nov. 4, 2005) (even if a bill of information is defective, the defect is not one of such magnitude to deprive the trial court of jurisdiction); *Atteberry v. Director, TDCJ-CID*, 2016 WL 4487894, at *3 (E.D. Tex. July 19, 2016) ("a plea does not become vulnerable to habeas corpus review simply because later judicial decisions indicate that the plea rested on a faulty premise or that the legal and factual evaluations of the defendant's counsel were incorrect"); *Bruce v. McCain*, 2016 WL 11216510, at *3 (E.D. La. Aug. 31, 2016).
[44] *McKinney v. Deville*, No. 2016 WL 6500971, at *4 (E.D. La. Oct. 13, 2016).

8

As discussed below, the pleas were knowingly, intelligently, and voluntarily made, and the bargain was kept by the state, so Petitioner is not entitled to withdraw his plea.[45]

### b. The Guilty Pleas Were Knowingly, Intelligently, and Voluntarily Made by Constitutional Standards

Though Petitioner attempts to argue that his guilty pleas are invalid due to a breach of the contract that is the plea agreement by the state, the facts do not support this characterization of what transpired.[46] As indicated by the *Boykin*[47] colloquy, in exchange for pleading guilty, the state agreed to recommend a two-year sentence and would not seek heightened sentences based upon the fact that Petitioner is a habitual offender.[48] The State did not breach that agreement. As evidenced by the transcript, the state *did* recommend two years as the total sentence.[49] Rather, because the trial court did not take the recommendation of two years and instead sentenced the Petitioner to a total of 50 years imprisonment, the true argument appears to be that the pleas were not knowingly and intelligently made.[50]

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently."[51] "Solemn declarations in open court carry a strong presumption of verity," and findings based on those representations "constitute a formidable barrier in any subsequent

---

[45] *Deville v. Whitley*, 21 F.3d 654, 657 (5th Cir. 1994) ("If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review."). Here, as discussed below, Petitioner understood everything necessary and voluntarily chose to plead guilty.
[46] R. Doc. 5, pp. 13-16.
[47] *Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (federal constitutional law requires that, before it accepts a guilty plea, the trial court must ensure that the defendant has a full understanding of what the plea connotes and of its consequence. The exchange that occurs when a plea is being entered is referred to as the *Boykin* colloquy).
[48] R. Doc. 14-2.
[49] R. Doc. 14-2, p. 22 ("They're recommending two years.").
[50] R. Doc. 5, pp. 13-16. Petitioner does not argue that the pleas were involuntary, and no evidence provided indicates that the pleas were involuntary. To the contrary, the *Boykin* colloquy demonstrates that Petitioner did voluntarily enter his pleas. R. Doc. 14-2, p. 31.
[51] *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000) (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).

9

collateral proceedings."[52] The trial court judge clearly indicated to Petitioner that, though the recommendation was for two-years, he was not making any guarantees.[53] The judge explicitly stated as follows:

> you're looking at two, ten, 20 – you're looking at a possibility of 30-something years in the penitentiary. That's what you're pleading to. It's not likely you're going to get that, but I'm not promising you're getting two either. So you may end up doing a substantial amount of time in jail. I don't know.[54]

Petitioner's attorney assured the judge that he and Petitioner had discussed that there was "a lot of exposure" and that Petitioner's attorney "never indicated any type of agreement or that there was any guarantee."[55] The trial court judge went on to make clear that he was "the one that's ultimately going to make the decision as to what your sentence is, Mr. Westley, and I'm here to tell you I'm not promising you anything."[56] The trial court judge reiterated multiple times that he was the "only one" who was going to decide the sentence, including that he would listen to the recommendation from the state and the mitigation from Petitioner's lawyer, but the trial court judge was "ultimately" the one who was going to decide and that he had not yet made up his mind.[57] Petitioner stated on the record that he understood that the trial court judge was the one to decide his fate, that he faced "a lot" of exposure, and that there were no guarantees for what sentences he would receive.[58] Further, in taking the guilty plea on the record, the trial court judge went through each charge and count as follows:

> In bill number 3-08-206, you're charged with felony theft between $300.00 and $500.00; and, in bill number 3-08-285, you're charged with felony theft in excess of $500.00. So I'm now going to read you the charge of felony theft and then I'll read you the two sentences and the poss – I mean, the two penalties for the various

---

[52] *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) (superseded by AEDPA on other grounds); *United States v. Cothran,* 302 F.3d 279, 283-84 (5th Cir.2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy.").
[53] R. Doc. 14-2, p. 22.
[54] R. Doc. 14-2, p. 22.
[55] R. Doc. 14-2, p. 22.
[56] R. Doc. 14-2, p. 23.
[57] R. Doc. 14-2, p. 23.
[58] R. Doc. 14-2, p. 23.

10

>charges…when the misappropriation or taking amounts to a value of $500.00 or more, shall be imprisoned, with or without hard labor, for not more than ten years…when the misappropriation or taking amounts to a value of $300.00 or more but less than a value of $500.00, the offender shall be imprisoned, with or without hard labor, for not more than two years…. In bill of information 04-10-0228, you're charged with forgery.  Whoever commits the crime of forgery shall be…imprisoned, with or without hard labor, for not more than ten years.  In bill of information 9-09-0579, you're pleading guilty to four separate counts of illegal issuing worthless checks in excess of $500.00.  Whoever commits the crime of issuing worthless checks, when the amount of the check is $500.00 or more, shall be imprisoned, with or without hard labor, for not more than ten years…. You are pleading guilty to four separate counts of illegal issuing worthless checks on bill number 9-09-0579.[59]

Throughout the above exchange, the trial court judge explained each crime and possible consequences, and Petitioner stated that for each count he understood the charges and possible consequences.  Further, Supreme Court precedent does not require a defendant to have either knowledge about the possibility of consecutive sentences, or about the manner in which consecutive sentences are to be calculated in order for a guilty plea to be knowing and voluntary.[60]  Only the knowledge of what each charge is and the potential maximum sentence for each charge is required.[61]

Based upon the above information provided by the trial court judge, Petitioner faced up to 62 years imprisonment.  Though Petitioner may have believed he was going to get lesser sentences based upon the recommendation of the State and the statements regarding the potential number of years he may receive, he was not *promised* a lesser sentence, and a "mere understanding" on the part of a defendant that he will receive a lesser sentence in exchange for a guilty plea will not

---

[59] R. Doc. 14-2, pp. 24-26.
[60] *Leachman v. Davis*, No. 18-0544, 2020 WL 1426439, at *10 (S.D. Tex. Feb. 12, 2020), *report and recommendation adopted*, No. 18-0544, 2020 WL 1333160 (S.D. Tex. Mar. 21, 2020), *certificate of appealability denied sub nom. Leachman v. Lumpkin*, No. 20-20323, 2021 WL 2627464 (5th Cir. Apr. 19, 2021).
[61] *Trotter v. Vannoy*, 695 Fed.Appx. 738, 742 (5th Cir. 2017) ("A defendant understands the consequences of his guilty plea with respect to sentencing if he knows the maximum prison term and fine for the offense charged.") (internal quotations and citations omitted). *Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir.1982) ("The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged."), *cert. denied,* 459 U.S. 867 (1982).

abrogate the plea should a heavier sentence be imposed.[62] Because Petitioner knew what each charge was, the potential maximum sentence for each charge, and the rights he was waiving by entering a plea,[63] his plea was knowing, intelligent, and voluntary.

### c. The Sentences do not Violate the Eighth Amendment

Finally, Petitioner argues that the sentences imposed are so excessive that they violate the Eighth Amendment's prohibition against cruel and unusual punishment. Petitioner was sentenced as follows: (1) on the count of felony forgery, Petitioner was sentenced to the maximum sentence of 10 years; (2) for felony theft over $500.00, Petitioner was sentenced to the maximum sentence of ten years; (3) for each of the four counts of issuing worthless checks, for which the maximum sentence was ten years, Petitioner was sentenced to seven years on each count; and (4) for the crime of felony theft between $300.00 and $500.00, Petitioner was sentenced to the maximum term of 2 years.[64] These maximum terms were only due to the fact that, as a result of the plea deal, the State was not pursuing sentencing against Petitioner as habitual offender, in which case the maximum sentence for each felony would have been life.[65] Each sentence was to run consecutively. Four opinions organized by docket number issued from the Louisiana First Circuit

---

[62] *Daniel v. Cockrell,* 283 F.3d 697, 703 (5th Cir. 2002) (recognizing the difference between a clear and unequivocal promise or guarantee of a lesser sentence and a mere inaccurate prediction that a lesser sentence would be imposed and holding a guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence, even when the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed) *abrogated on other grounds by Glover v. United States*, 531 U.S. 198 (2001); *United States v. Vadner,* 160 F.3d 263, 264-65 (5th Cir. 1998) (holding trial court's failure to advise defendant of his ineligibility for probation did not render guilty plea involuntary); *DeVille v. Whitley,* 21 F.3d 654, 658 (5th Cir. 1994) ("A mere understanding by Appellants, however, that they would receive a lesser sentence in exchange for a guilty plea will not abrogate the plea should a heavier sentence actually be imposed."); *Spinelli v. Collins,* 992 F.2d 559, 561 (5th Cir.1993); *United States v. Santa Lucia,* 991 F.2d 179, 180 (5th Cir.1993) (holding a defendant's reliance upon his counsel's erroneous prediction regarding the probable length of sentence does not render a defendant's guilty plea involuntary or unknowing where the defendant was properly advised regarding the maximum length of sentence possible under applicable law); *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir.1989).
[63] R. Doc. 14-2, pp. 26-27.
[64] R. Doc. 14, pp. 112-13.
[65] *See* La. R.S. 15:529.1.

12

Court of Appeals regarding this issue.[66] In three opinions, the Louisiana First Circuit Court of Appeals noted that Petitioner "is the worst type of offender since he committed so many separate crimes" and noted that Petitioner had been arrested over seventeen times for theft-related offenses.[67] In each case, the First Circuit also opined that "the consecutive sentences which were imposed clearly were justified since the defendant posed an unusual risk to the safety of the public due to his repeated criminality" and concluded "that the instant sentence is not excessive individually or as part of a total sentence of fifty years."[68]

Considering the specific reasons noted by the state appellate court for upholding the sentences and the fact that Petitioner's sentence is comparable to sentences imposed in similar, or even less egregious cases,[69] the state court's decision was not an unreasonable application of clearly established federal law. For example, in *Rummel v. Estelle*,[70] the Supreme Court held that a defendant's sentence of life imprisonment for a conviction for obtaining $120.75 by false pretenses, pursuant to a recidivist statute providing a mandatory sentence of life imprisonment for any defendant convicted of three felonies, did not violate the Eighth Amendment, even where the defendant's prior offenses were non-violent. Further, the sentences were within the statutory limits, and "the legislature…has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme."[71] In view of the broad discretion accorded to the state

---

[66] *State v. Westley*, 2012-0956, 2013 WL 595764, at *3 (La. 1st Cir. 2/15/2013); *State v. Westley*, 2012-0954, 2013 WL 595717 (La. App. 1st Cir. 2/15/13); *State v. Westley*, 2012-0955, 2013 WL 595719 (La. App. 1st Cir. 2/15/13); *State v. Westley*, 2012-0957, 2013 WL 595767 (La. App. 1st Cir. 2/15/13).
[67] *State v. Westley*, 2012-0956, 2013 WL 595764, at *2-3 (La. 1st Cir. 2/15/2013); *State v. Westley*, 2012-0954, 2013 WL 595717, at *2-3 (La. App. 1st Cir. 2/15/13); *State v. Westley*, 2012-0955, 2013 WL 595719, at *2-3 (La. App. 1st Cir. 2/15/13).
[68] *Id.*
[69] *See State v. Mims*, 01-1507 (La. App. 5th Cir. 806 So. 2d 760 (La. App. 5th Cir. 12/26/2001) (twenty-year sentence for one count of felony theft over $500.00 when sentenced pursuant to the habitual offender statute though no previous crimes were crimes of violence); *State v. Dufrene*, 2017-1496 (La. App. 1st Cir. 6/4/2018) (sentences for three counts of forgery of seven years each to run consecutive to each other for a total of 21 years was not excessive).
[70] 445 U.S. 263, 266–67 (1980).
[71] *United States v. Gonzales*, 121 F.3d 928, 943 (5th Cir. 1997), *abrogated on other grounds by United States v. O'Brien*, 560 U.S. 218, 234 (2010); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

13

court's sentencing decision and the proportionality of the instant sentence in comparison to *Rummel*, Petitioner fails to make a debatable showing that no fair-minded jurist could agree with the state court ruling.[72] Thus, this claim fails.

### IV. A Certificate of Appealability Should be Denied

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[73] Although Petitioner has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[74] A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[75]

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[76] In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

### **RECOMMENDATION**

---

[72] The Court also notes that this case is a far cry from *Solem v. Helm*, 463 U.S. 277, 284 (1983). In that case, the sentence for life was for one bad check when the petitioner had a history including three felonies. In only this case that is before the Court, and not looking into Petitioner's past convictions, Petitioner has more than three felonies.
[73] 28 U.S.C. § 2253(c)(1)(A).
[74] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[75] 28 U.S.C. § 2253(c)(2).
[76] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

IT IS RECOMMENDED that Petitioner's application for habeas corpus relief[77] be **DENIED,** and that this proceeding be **DISMISSED WITH PREJUDICE.**

IT IS FURTHER RECOMMENDED that a certificate of appealability be **DENIED** if Petitioner seeks to pursue an appeal.

Signed in Baton Rouge, Louisiana, on March 7, 2022.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[77] R. Docs. 1 & 5.