## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

WINSTON DEMOND WESTLEY                              CIVIL ACTION

VERSUS

JASON KENT, ET AL.                                  NO. 19-00170-BAJ-SDJ

## <u>RULING AND ORDER</u>

On March 14, 2011, Petitioner Winston Demond Westley pleaded guilty to one count of forgery, two counts of theft, and four counts of issuing worthless checks— seven felony counts in all—in the Nineteenth Judicial District Court for the Parish of East Baton Rouge (the "19th JDC"). None of Petitioner's offenses involved violence; no individual offense involved loss greater than $4,000; all told Petitioner's offenses resulted in an aggregate loss less than $20,000. At Petitioner's plea hearing, the State's Attorney promised to recommend a sentence of just two years imprisonment, and the Court stated that although Petitioner was "looking at a possibility of 30-something years in the penitentiary . . . . [i]t's not likely you're going to get that." Still, at sentencing, Petitioner's convictions yielded seven *consecutive* sentences totaling *50 years* imprisonment.

On its face, Petitioner's sentence is remarkable. Equally remarkable, however, is Petitioner's conduct between his plea hearing and his sentencing hearing, when he managed to escape Parish Prison, flee Louisiana, and get re-arrested on new charges in Atlanta, ultimately requiring the intervention of Louisiana, Georgia, *and* federal authorities to secure his return.

The question this Court must now decide is whether in addition to being

remarkable, Petitioner's sentence is also unconstitutional. In March 2019, after failing to obtain relief in state court, Petitioner initiated these habeas proceedings, attacking the constitutionality of his convictions and sentences, pursuant to 28 U.S.C. § 2254. The Magistrate Judge has issued a **Report and Recommendation (Doc. 23, the "R&R")**, which recommends that Petitioner's habeas petition be dismissed on the merits. Petitioner objects.

Upon *de novo* review, and for reasons set forth below, the Court will adopt the R&R *in part*, to the extent the R&R determines that the Petition is timely. The Court will *not* adopt the R&R's analysis of the merits of Petitioner's claims. Instead, the Court will dismiss the Petition for the reasons set forth herein.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A. Petitioner's criminal charges and relevant offense conduct

Petitioner's convictions arise from four separate bills of information (BOI) charged in the 19th JDC between March 6, 2008 and April 12, 2010. Case number 03-08-0205, filed March 6, 2008, charged Petitioner with one count of felony theft in an amount greater than $500, in violation of La. R.S. § 14:67(B)(1) (2006). Specifically, the BOI alleged:

> Count 1    on or about November 21, 2007 the defendant committed theft of building materials from Acoustical Supply, Inc. having a value of five hundred ($500.00) dollars or more

(Doc. 14-3 at p. 15). The underlying investigation records indicate that Petitioner "negotiated (6) counterfeit checks" to Acoustical Supply (Doc. 14-3 at p. 29), resulting in a total loss of $2,518, (Doc. 14-2 at p. 27). At the time of Petitioner's offense, felony theft in an amount greater than $500 was punishable by up to 10 years'

2

imprisonment.

Case number 03-08-0206, also filed March 6, 2008, charged Petitioner with two more counts of theft: (1) felony theft in an amount between $300 and $499.99, in violation of La. R.S. § 14:67(B)(2) (2006); and (2) felony theft in an amount greater than $500, in violation of La. R.S. § 14:67(B)(1) (2006). The BOI alleged:

> Count 1     on or about July 17, 2007 the defendant committed theft of of money from Fidelity Bank having a value of three hundred ($300.00) dollars or more, but less than five hundred ($500.00) dollars,

> Count 2     on or about 9/11/07 through 11/6/07 the defendant committed theft of money from Hancock Bank in an amount greater than $500.00

(Doc. 14-2 at p. 138). These offenses also involved negotiating counterfeit checks, resulting in a loss of $570 to Fidelity Bank, and $5,708.41 to Hancock Bank. (Doc. 14-2 at p. 27). At the time of Petitioner's offense, theft in an amount between $300 and $499.99 was punishable by up to 2 years' imprisonment.

Case number 09-09-0579, filed September 17, 2009, charged Petitioner with four counts of issuing worthless checks in an amount greater than $500, in violation of La. R.S. § 14:71(C) (2006). The BOI alleged:

> Count 1     on or about October 6, 2007, the defendant issued worthless checks to Home Furniture in an amount of five-hundred ($500.00) dollars or more,

> Count 2     on or about November 13, 2007, the defendant issued worthless checks to Simple Simon in an amount of five-hundred ($500.00) dollars or more,

> Count 3     on or about June 9, 2008, the defendant issued worthless checks to Simple Simon in an amount of five-hundred ($500.00) dollars or more,

> Count 4          on or about January 27, 2009, the defendant issued
>                  worthless checks to the City of Baton Rouge in an amount
>                  of five-hundred ($500.00) dollars or more

(Doc. 14-2 at p. 143). Count 1 resulted from Petitioner having issued Home Furniture two separate checks on October 6, 2007: one for $2,714 (Check No. 1086); and the other for $1,198.99 (Check No. 1070). (Doc. 14-3 at p. 107). Count 2 resulted from Petitioner having issued Simple Simon Tire one check for $964.68 on November 13, 2007 (Check No. 2770). (*Id.*). Count 3 resulted from Petitioner having issued Simple Simon Tire one check for $2,594.12 on June 9, 2008 (Check No. 1191). (*Id.*). Finally, Count 4 resulted from Petitioner having issued the City of Baton Rouge one check for $60 on January 27, 2009 (Check No. 111). (*Id.*).

At the time of Petitioner's offenses, issuing worthless checks in an amount greater than $500 was punishable by up to 10 years' imprisonment. La. R.S. § 14:71(C) (2006). By contrast, issuing worthless checks in an amount less than $300 was generally defined as a misdemeanor with a maximum sentence of just six months imprisonment. La. R.S. § 14:71(E) (2006). Relevant here, however, a stiffer penalty applied to a defendant with at least two prior misdemeanor convictions for writing bad checks: "If the offender in such cases has been convicted of issuing worthless checks two or more times previously, upon any subsequent conviction he shall be imprisoned … for not more than two years[.]" *Id.* Notably, at the time he pleaded guilty, Petitioner's criminal record showed at least *six* prior misdemeanor convictions for issuing worthless checks, putting him squarely within the category of repeat offenders subject to a felony 2-year prison sentence upon a subsequent conviction of

issuing worthless checks less than $300. (*See* Doc. 14-3 at p. 179, Doc. 14-4 at p. 1).

Finally, case number 04-10-0228, filed April 12, 2010, charged Petitioner with one count of felony forgery in violation of La. R.S. § 14:72. The BOI alleges:

> on or about October 6, 2009, the defendant committed forgery by making and transferring a forged East Baton Rouge Parish Prison document, knowing it to be a forgery, with intent to defraud

(Doc. 14-3 at p. 171). Petitioner's offense resulted from Petitioner's attempt to clear a bench warrant for his arrest issued by the Twenty-Third Judicial District Court, Parish of St. James, Louisiana (the "23rd JDC"). Posing as an attorney ("Charles Strickland"), Petitioner contacted the East Baton Rouge Parish Prison (EBRPP) to obtain a letter on EBRPP letterhead setting forth all prior dates that he (Petitioner) was detained at EBRPP. Thereafter, upon receiving the letter (by fax), Petitioner altered the dates to reflect that he was incarcerated at EBRPP on the date that he missed court in the 23rd JDC. Petitioner then faxed the *altered* letter to the St. James Parish Sheriff's Office. St. James Sheriff's Deputies quickly identified Petitioner's alterations, and contacted EBRPP officials and informed them of Petitioner's ruse. (Doc. 14-4 at pp. 14-15). At the time of Petitioner's offense, felony forgery was punishable by up to 10 years' imprisonment. La. R.S. § 1472(D).

### B. Petitioner's plea hearing

On March 15, 2011, Petitioner appeared in the 19th JDC to plead guilty to the majority of the offenses set forth in the four BOIs. The state court record is not entirely clear why more than *three years* passed between the filing of BOIs 03-08-0205 and 03-08-0206 (in March 2008), and Petitioner's plea hearing. In its opposition brief, however, the State explains that Petitioner caused the delay by repeatedly

5

failing to appear for earlier court dates, resulting in multiple bond forfeiture judgments and bench warrants entered against him (on May 27, 2008, June 23, 2008, August 20, 2008, and January 19, 2010). Petitioner does not contest this explanation.

Petitioner was represented at his plea hearing by court-appointed counsel. At the outset, counsel represented that Petitioner had already "tendered to the District Attorney Office [sic] $5,000" in partial satisfaction of any restitution that was ultimately ordered as part of Petitioner's sentence. (Doc. 14-2 at p. 19). Counsel acknowledged that Petitioner's payment was "not an agreement for any type of specific consideration," but was merely a showing of "good faith in his [Petitioner's] efforts to make restitution." (*Id.*).

Immediately thereafter, Petitioner's counsel set forth "the nature" of Petitioner's plea, stating:

> I've explained to him [Petitioner] that the nature of the plea is the State is willing to … recommend at two-year sentence. I've also advised him that because there was no … pretrial conference, he was not present at that conference … the Court would not agree to any specific sentence but would take into consideration what[] … has transpired, but, in essence, that there is no guarantee. … [A]nd the State is willing to waive the habitual offender as part of this plea. I show he has one prior felony conviction.

(Doc. 14-2 at p. 20). The State's Attorney confirmed that these were the basic terms of Petitioner's plea, adding further that, in return for Petitioner's "good faith in pleaing [sic] today [and] turning in this money," the State would dismiss two *additional* BOIs—case number 07-08-0881 (a misdemeanor reckless driving charge) and 08-08-0306 (a separate felony theft charge). *Id.* Additionally, the State abandoned Count 2 of case number 03-08-0206 (alleging theft of money from Hancock

Bank in an amount greater than $500). (*See* Doc. 14-2 at p. 24 ("The Court: … Mr. Westley, in Bill Number 3-08-206 you're charged with felony theft between $300 and $500[.]"); *see also id.* at p. 33 (clarifying for the Court reporter that Petitioner pleaded guilty to "felony theft between $300 and $500 [in] … 3-08-306").

After expressly clarifying the charges to which Petitioner would be pleading guilty—"one count of forgery, one count of felony theft in excess of $500, one count of felony theft between $300 to $500 [sic] and … four counts of issuing worthless checks in excess of $500"—the Court engaged Petitioner and Petitioner's counsel in the following colloquy:

> **The Court:** All right, Mr. Westley, before we go any further, I want to make sure that you understand something very, very clearly because I had a long discussion with your lawyer and with the State of Louisiana on Friday in terms of what your sentence is going to be. I am making no commitment whatsoever to you on a sentence because I want to know a lot about your background and your history. I want to know about the facts of this offense and what it is you've done. I want to know about your record before I decide what it is I'm going to do. You might end up – they're recommending two years. You might end up with 20 years. Do you understand that. Make sure before we even get started that that's a possibility.
>
> …
>
> By my calculations you're looking at two, ten, 20 – you're looking at a possibility of 30-something years in the penitentiary. That's what you're pleading to. It's not likely you're going to get that, but I'm not promising you're getting two either. So you may end up doing a substantial amount of time in jail. I don't know.
>
> **Mr. Collier [Petitioner's counsel]:** Your Honor, … we have discussed that … this is a … lot of exposure; and, again, while I never indicated any type of agreement or that there was any guarantee, I believe that the $5,000 that Mr. Westley did show today and tender under these circumstances does show a good faith effort, extreme good faith effort, to make whole and … resolve this issue of restitution.

...

 **The Court:** ... That may be accurate; but I'm the one that's ultimately going to make the decision as to what your sentence is, Mr. Westley; and I'm here to tell you I'm not promising you anything.

 **Mr. Collier:** ... And again, just for the record, ... I have not made a guarantee, the two years a guarantee; but, again, it's a ... recommendation by the State.

 **The Court:** And let me tell you how it works Mr. Westley. I'm the one and I'm the only one that decides what your sentence is going to be. I'll listen to a recommendation by the State and I'll listen to any mitigation from your lawyer, but I'm the one that ultimately makes up my mind, and I'm telling you now I haven't made it up.

 **Mr. Westley:** Yes, sir.

 **The Court:** I want to make sure you understand that very clearly before we begin your proceeding. Do you understand that?

 **Mr. Westley:** Yes, sir.

 **The Court:** Do you still wish to plead guilty to these charges?

 **Mr. Westley:** Yes, sir.

(Doc. 14-2 at pp. 22-23).

Petitioner was then sworn, and the Court reviewed the elements and maximum penalties of each the seven offenses to which Petitioner was pleading guilty. (Doc. 14-2 at pp. 24-26). Petitioner expressly confirmed his understanding, stating "Yes, sir" as to each offense. (*Id.*). Thereafter, Petitioner confirmed his understanding that by pleading guilty he was forfeiting his trial rights, as well as his privilege against self-incrimination. (*Id.* at pp. 26-27).

Then, the Court engaged the State's Attorney and Petitioner in the following colloquy to determine the factual basis of Petitioner's offenses:

 **The Court:** Before I accept your plea, I need to be satisfied that

8

there is a factual basis for accepting your plea, so I'm going to ask the State at this time to tell me what it is you're accused of having done in each of these cases. I want you to listen to what Ms. Morvant [the Assistant District Attorney] has to say and afterwards I'm going to ask you if that's what happened. Okay?

…

**Ms. Morvant [Assistant District Attorney]:** Your Honor, as to both files of [sic] 3-8-206, 3-8-205, if the State would have gone to trial on those charges, it would have been shown that the defendant had a construction company called Virtuous Home Construction; and in both what would -- he had done was allegedly kited checks that were fictitious from one bank to another, therefore, causing each entity to lose money. Fidelity Bank on Count I of docket ending in 206 has been paid in full. They were paid $510. the Count II which is Hancock Bank is still at a loss of $5,108.41 per their loss prevention security, Ms. Vicky Craig, yesterday. And, in docket 205, Acoustical Supplies who had dealt with him through his construction company is, also, out of money, they are out of [sic] $2,518. In docket 9-9-579, the State would have shown, for those four counts, that the defendant, through the dates of October 6th, 2007, through January 27th of 2009, did issue worthless checks over the amount of $500 to venders such as Home Furniture, Simple Simon, Simple Simon [sic] [and] the City of Baton Rouge that were greater than $500. Again, he has paid $3,000 in money orders towards those fines and fees. In docket number 4-10-228, which is the charge of forgery, the State would have shown that, on or about October 6th, 2009, the defendant called East Baton Rouge Parish Prison asserting himself to be a Charles Strickland who is an attorney in Shreveport, asking for a dates of incarceration paper to be faxed to him. They, indeed, faxed it to him. He, in turn, faxed it to St. James Parish Prison where that deputy found it to be suspicious in order that [sic] he was trying to recall a bench warrant. Through conversations between both Parishes as well as Judge Kliebert's office, they found that the defendant was forging the documents that had been sent. Furthermore, Charles Strickland did not know and had never met nor hired -- been hired by Mr. Winston to represent him in that manner. He was asked.to come in to recall that bench warrant. Subsequently, on the way to St. James, he was in an auto accident and arrested by a trooper there at the scene.

**The Court:** Is that what happened, Mr. Westley?

**Mr. Westley:** Yes, sir, your Honor.

(Doc. 14-2 at pp. 27-29). Thereafter, the Court queried Petitioner to clarify the

specific circumstances of the forgery count set forth in BOI 04-10-0228. (*Id.* p. 29). The Court did not ask any additional questions regarding the factual bases of the other counts. (*See id.*).

Finally, after confirming that Petitioner was not under the influence of any drugs or alcohol, and that his guilty plea was not induced by any threats or promises, the Court again tested Petitioner regarding his understanding of the potential risks at sentencing:

> **The Court:** Has anyone made you any promises as to what your sentence might be because I want to remind you that I'm the one that does the sentencing and I don't know what your lawyers might have suggested to you? I know Mr. Collier did not tell you what your sentence is going to be. I know what he hopes it to be, but I'm here to tell you he has no knowledge about what I'm going to do because I'm not sure what I'm going to do. Do you understand that?

> **Mr. Westley:** Yes, sir.

> **The Court:** So, when I pronounce sentence, whatever that is, I don't want you to say, well, wait a minute, Judge, I was promised something different than what I'm getting. Has anybody promised you any sentence at all in this case?

> **Mr. Westley:** Nothing but the -- but the -- .

> **The Court:** I'm sorry?

> **Mr. Westley:** No, sir, nothing but the recommendation and --

> **The Court:** And you realize that a recommendation is nothing more than a recommendation?

> **Mr. Westley:** I do, your Honor.

> **The Court:** I don't have any responsibility to follow that at all?

> **Mr. Westley:** Yes, sir.

> **The Court:** Okay.

**Mr. Collier:** And I think the record's clear that the State is not going to treat him as a habitual offender as part of this agreement.

**The Court:** Is that correct, --

**Ms. Morvant:** That is correct.

**The Court:** -- in -- in the event that's -- and do you understand . that?

**Mr. Westley:** Yes, sir.

**The Court:** Any other promises?

**Mr. Westley:** No, sir.

**The Court:** Do you still wish to plead guilty to all of these charges?

**Mr. Westley:** Yes, sir, your Honor.

(Doc. 14-2 at pp. 31-32). Thereafter, the Court accepted Petitioner's pleas, finding that they were "knowingly, intelligently and voluntarily made." (*Id.* at p. 32). Finally, the Court remanded Petitioner to the Parish Prison and set a post-conviction bond of $150,000, explaining:

> I do not intend on him getting out of jail because he is going to serve some time. He has a history of not coming to Court when he's supposed to. In my opinion he's a flight risk and I'm not letting him out.

(Doc. 14-2 at p. 33).

### C. Petitioner's sentencing hearing

Petitioner's sentencing hearing was originally set for July 11, 2011. (Doc. 14-2 at p. 88). Petitioner did not appear, however, because he somehow secured his own release from the Parish Prison—*without* posting bond—and absconded to Georgia. (*See* Doc. 14-2 at pp. 88-92). Here again, the state court record is vague regarding how Petitioner managed to convince Prison officials to let him go. In its opposition,

11

however, the State explains that Petitioner "forged bond papers to escape prison." (Doc. 12 at p. 3). Again, Petitioner does not contest this representation.

Petitioner's escape and flight resulted in a bond forfeiture judgment and a bench warrant for his arrest, and required intervention by multiple state and federal authorities. He was ultimately returned to Louisiana after Atlanta police stopped him for a traffic infraction, ran his record, and discovered the Louisiana bench warrant. (*See id.*).

On December 14, 2011, Petitioner finally appeared for sentencing represented by different court-appointed counsel. The record shows that nearly half of Petitioner's sentencing hearing was devoted to determining Petitioner's whereabouts at the time of his original hearing. To put it mildly, Petitioner was less candid with the Court, indicating that he failed to appear at his July 11 hearing because he had been arrested in Georgia for a traffic infraction "sometime in May," and had been in jail ever since. (Doc. 14-2 at pp. 88-89). In fact, prison records reflect that Petitioner was not released from Parish Prison until July 11 (the date of his original sentencing hearing) and was not arrested in Georgia until November 14, 2011. (*See id.* at pp. 88-91).

In any event, for purposes of sentencing, the Court ultimately "accepted" that Petitioner was imprisoned in Georgia "on the day you were supposed to be here." (Doc. 14-2 at p. 91). Thereafter, the Court afforded Petitioner the opportunity to offer mitigation, and, on Petitioner's behalf, counsel urged the Court to consider a deferred sentence so that Petitioner could continue making restitution to his victims. (*Id.* at

pp. 92-93). The State's Attorney offered "nothing" in response, despite the State having promised to recommend a two-year sentence as part of Petitioner's plea agreement. (*Id.* at p. 93).

The Court rejected Petitioner's request for leniency and ultimately sentenced Petitioner to 10 years imprisonment for felony theft exceeding $500 (BOI 03-08-205), 2 years imprisonment for felony theft exceeding between $300 and $499.99 (BOI 03-08-206), 7 years imprisonment for *each* of the four counts of issuing worthless checks exceeding $500 (BOI 09-09-0579), and 10 years imprisonment for forgery (BOI 04-10-0228), each term to run *consecutively*, for a total of *50 years* imprisonment. (Doc. 14-2 at pp. 95-96). The Court further ordered that Petitioner pay restitution in the amount of $13,230.20, which amount expressly included an award of $5,708.41 to Hancock Bank, *despite* the Court having previously dismissed the only theft charge involving Hancock Bank. (*See* Doc. 14-2 at p. 96).

To justify Petitioner's lengthy sentence, the Court offered the following:

> **The Court:** The Court prepared … has done a complete presentence investigation on this defendant. The defendant was charged with forgery. The forgery emanated from a bench warrant in St. James Parish. This defendant called East Baton Rouge Parish and identified himself as an attorney, Charles Strickland. He requested a fax of dates that he had been incarcerated in East Baton Rouge Parish Prison. He then altered the fax, and made it appear that East Baton Rouge Parish Prison was contacting St. James Parish and stating that the defendant had been incarcerated in East Baton Rouge Parish during the date that the bench warrant was issued in St. James Parish strikingly similar to his claim to have been in jail when he was supposed to be here for sentencing. He then called St. James Parish, again, identifying himself as Charles Strickland and tried to get the bench warrant recalled and a new court date issued. St. James Parish sensed something fishy was going on, they contacted East Baton Rouge Parish Prison and the actual attorney, Charles Strickland, who lives in Shreveport. The deputy at

13

East Baton Rouge Parish Prison confirmed that the fax that St. James received was not any fax that had been prepared for or by Charles Strickland. Further, the actual Charles Strickland confirmed that he had no connection whatsoever and had never met Winston Westley, and that Westley was using his identity without his permission. The felony theft emanates from several banking accounts where he ordered blank checks. He then closed the accounts, he would use the checks he ordered and fill in the account number with the closed account. He would then use these checks to pay for supplies from the various victims in this case. On the other felony theft charge he created false checks again using [a] legitimate actual customer, Edith Benson, and fictitious account numbers all originating from Fidelity Bank and Hancock Bank. And in issuing the worthless checks he used worthless checks to purchase goods at Home Furniture, Simple Simon, and the City of Baton Rouge all in amounts greater than five hundred dollars. The Court has reviewed this Defendant's record. He has three previous felony convictions. He was convicted for distribution of cocaine. He was convicted for issuing worthless checks, and he was convicted for another count of issuing worthless checks in 2004 . He has these offenses, and he has two additional charges in Iberville Parish that has [sic] no disposition. In addition to that he was arrested over 17 times for arrests for theft related crimes. Many of them were no billed for whatever reason and we have no disposition on some of them. On many of them he pled guilty to misdemeanors that were reduced. The Court, after considering the information contained in the PSI, all of the documents and the comments by all parties, and after considering the sentencing guidelines as outlined in the Code of Criminal Procedure Article 895.1 does not believe that probation for this defendant is appropriate. The court finds that there is an undue risk that during a period of probation or suspension of sentence that this defendant will commit more crimes, and that the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his confinement to an institution, and that a lesser sentence would deprecate the seriousness of this defendant's crime.

(Doc. 14-2 at pp. 94-95).

### D. Petitioner's direct appeal

Petitioner sought reconsideration of his sentences in the district court, arguing that the court did not adequately consider and state its reasons for imposing consecutive sentences. The district court summarily denied Petitioner's request for

14

reconsideration on January 27, 2012.

Thereafter, Petitioner appealed his sentences (but not his convictions) via four separate appeals (2012-KA-0954, 0955, 0956, 0957). In each appeal Petitioner argued that his sentences were excessive under state law due to the district court's failure "to properly apply the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 [and] La.C.Cr.P. art. 883)." (*See* Doc. 14 at p. 101).

On February 15, 2013, the Louisiana First Circuit Court of Appeals issued four opinions affirming Petitioner's sentences, noting in each opinion that Petitioner's sentences were "not excessive individually or as part of a total sentence of fifty years." The First Circuit reasoned that even if Petitioner's combined sentence was substantial, each individual sentence was set at or below the statutory maximum—which was substantially *less* than what Petitioner would have faced had he been charged as a habitual offender.[1] Further, the First Circuit held that consecutive sentences were justified in light of "the circumstances of the instant offense[s], the defendant's prior criminal record, his favorable plea bargain agreement, and the reasons for sentencing given by the trial court." *See State v. Westley*, No. 2012-0954, 2013 WL 595717 at *3 (La. App. 1 Cir. 2/15/13) (affirming case number 03-08-0205); *see also State v. Westley*, No. 2012-0955, 2013 WL 595719 at *3 (La. App. 1 Cir. 2/15/13) (affirming case number 03-08-0206); *State v. Westley*, No. 2012-0956, 2013

---

[1] The First Circuit observed that Petitioner's criminal record showed at least three, and possibly *four* prior felony convictions. As such, Petitioner "significantly reduced his sentencing exposure by pleading guilty. … [I]n exchange for his guilty pleas, not only were several other charges dismissed, but he avoided possible exposure to enhanced sentences as a third or fourth-felony habitual offender under La. R.S. 15:529.1." *Westley*, 2013 WL 595717 at *3 & n.2.

WL 595764 at *3 (La. App. 1 Cir. 2/15/13) (affirming case number 04-10-0228); *State v. Westley*, 2012-0957, 2013 WL 595767 at *3 (La. App. 1 Cir. 2/15/13), (affirming case number 09-09-0579). Petitioner did not appeal the First Circuit's decision(s) to the Louisiana Supreme Court.

### E. Petitioner's state post-conviction proceedings

On February 18, 2014, Petitioner submitted his counseled state application for post-conviction relief (PCR), asserting the following claims:

- Petitioner's right to due process was violated when "the Assistant District Attorney, the presiding Judge, and Mr. Westley's court appointed counsel met" for a pre-trial conference and, *outside* Petitioner's presence, "essentially decided the outcome of [his] case," (Doc. 14-2 at pp. 2-3);

- Petitioner's right to due process was violated when the State broke its promise to recommend a two-year sentence at Petitioner's sentencing hearing, and when the district court sentenced him to 50 years imprisonment despite having indicated at the plea hearing that Petitioner "was looking at a maximum possibility of 30 years that he would 'not likely get,'" (*id.* at pp. 3-4);

- Petitioner's right to effective assistance of counsel was violated when his original (retained) attorney, Jarvis Antwine, (i) advised him to pay restitution prior to pleading guilty and thereafter "improperly withdrew"; when his second (court-appointed) attorney, Scott Collier, (ii) "did not counsel [him] on the maximum possible sentence," (iii) failed to correctly determine the extent of his criminal history, (iv) failed to determine that he "had been previously diagnosed with schizophrenia," and (v) allowed him to plead guilty to issuing a worthless check to the City of Baton Rouge in an amount exceeding $500, despite records showing that the actual amount was only $60; and when his third (court appointed) attorney, Mark Simmons, (vi) failed to request additional time to prepare for sentencing, (vii) failed to present mitigating evidence at sentencing; (viii) failed to hold the State to its promise to recommend a two-year sentence, and (ix) failed to challenge the restitution award to Hancock Bank despite the underlying charge having been dismissed, (*id.* at pp. 4-8);

16

- Petitioner's right to be free from "cruel, excessive, or unusual punishment" was violated by imposition of consecutive sentences totaling 50 years imprisonment for non-violent offenses, (*id.* at p. 8).

On June 19, 2015, the Commissioner issued a Preliminary Recommendation recommending that only Petitioner's ineffective assistance of counsel (IAC) claims should be considered on their merits, and that all additional claims were procedurally barred. (Doc. 14-1 at pp. 172-179). On August 29, 2015, the district court adopted the Commissioner's Recommendation, dismissing all but Petitioner's IAC claims. (Doc. 14-1 at p. 129).

On August 23, 2016, the Commissioner issued a final Recommendation recommending that Petitioner's remaining IAC claims should be dismissed on their merits "as Petitioner has failed to show that his plea was involuntarily given or that his counsels, Jarvis Antoine, Scott Collier, or Mark Simmons, were constitutionally ineffective. Nor has he proven that he was prejudiced by their representation." (Doc. 14 at p. 21). On September 28, 2016, the district court adopted the Commissioner's Recommendation, dismissing Petitioner's PCR in its entirety. (Doc. 14-1 at p. 19).

Petitioner sought review of his PCR in the Louisiana First Circuit and the Louisiana Supreme Court, but *only* as to his IAC claims. (*See* Doc. 14-1 at pp. 110-128). The First Circuit denied Petitioner's request for review on July 7, 2017 (Doc. 14-1 at p. 150); the Louisiana Supreme Court followed suit on February 18, 2019, stating (in relevant part), "Relator fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*." (Doc. 14-1 at p. 95). Two Supreme Court Justices dissented from the denial of the writ. (*See id.*).

17

### F.    Petitioner's federal habeas proceedings

On March 22, 2019, Petitioner, proceeding *pro se*, initiated this habeas action

seeking to have his convictions and sentences vacated under 28 U.S.C. § 2254. (Doc.

1). Petitioner's original *pro se* Petition alleges four claims for relief:

1. "Convicted of crime though actually innocent, in violation of Due Process[.] . . . Convicted of issuing worthless checks over $500 when the actual check was only $60. Was sentenced to 7 years when the maximum penalty was 6 months, a misdemeanor";

2. "Received Ineffective Assistance of Counsel … Pled guilty to crime [sic] though not guilty; allowed State to welch [sic] on plea agreement; misled concerning sentencing exposures; ordered to pay restitution on a crime he never pled guilty [sic]";

3. "Broken Plea Bargain, in violation of Due Process … Prosecutor promised to recommend 2 year sentence but did not and Judge did not express a possibility of more than 30 years, stating that even that much time was unlikely";

4. "Sentence Excessive … Sentenced to 50 years on non-violent offenses where many victims were reimbursed."

(Doc. 1 at pp. 3-6).

After submitting his original *pro se* Petition, Petitioner obtained counsel, and,

on June 27, 2019 submitted his counseled Amended Petition. (Doc. 5). The Amended

Petition expressly incorporates by reference "all claims … previously pleaded in this

action," and adds the following claims:

5. Petitioner "received ineffective assistance of counsel when his trial counsel failed to adequately investigate [his] criminal history";

6. Petitioner's "guilty plea to a felony offense for issuing a worthless check to the City of Baton Rouge was not knowingly and voluntarily entered."

(Doc. 5 at p. 17, 21). Additionally, the Amended Petition expands on Petitioner's

claims that counsel was ineffective for having failed to advise him of the maximum

punishment in his case, and that his sentences are "excessive." (*See* Doc. 5 at pp. 13-16; 23-25). Finally, in connection with these claims, and to excuse any procedural defaults, the Amended Petition asserts (but does not brief) a gateway claim of ineffective state post-conviction counsel, under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 5 at p. 13, n.8).

On November 20, 2019, Respondent DCC Warden Jason Kent (hereinafter, the "State") filed an Answer (Doc. 11) and Opposition (Doc. 12), objecting that Petitioner's habeas petition is untimely.

On March 7, 2022, the Magistrate Judge issued an R&R recommending that the  State's objection be overruled  because "the Petition … was filed on the 365th untolled day," or just within the AEDPA's one-year statute of limitations. (Doc. 23 at p. 2). Still, however, the R&R recommends that the Petition be dismissed because Petitioner's claims fail on the merits. (*Id.* at pp. 4-13). Finally, the R&R recommends that a certificate of appealability (COA) be denied. (*Id.* at p. 14).

The State does not object to the R&R; Petitioner objects to dismissal of his claims, and to denial of a COA. (Doc. 24). The R&R will be adopted *in part*, as set forth herein.

## II.    LAW AND ANALYSIS

### A. Standard

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), "28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The following limitations, in particular, are

relevant to this Court's analysis of Petitioner's claims.

First, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

Second, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "Exhausting" available state remedies means "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted). When a habeas petitioner's claim is *not* exhausted, it is properly dismissed without prejudice to allow the petitioner to pursue the federal claim in state court first. *Mercadel v. Cain*, 179 F.3d 271, 278 (5th Cir. 1999).

Third, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1)," *Pinholster*, 563 U.S. at 185, which requires that the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). This standard is intended to be "difficult to meet." *Pinholster*, 563 U.S. at 181 (quotation marks omitted).

Fourth, however, "section 2254(d) applies only to issues that have been adjudicated on the merits in state court," and "[r]eview is *de novo* when there has been no clear adjudication on the merits." *Miller v. Johnson*, 200 F.3d 274, 281 & n.4 (5th Cir. 2000).

Finally, Section 2254(d) also does not apply once the district court determines that a state court's decision is unreasonable under clearly established federal law. *Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013) ("Because the district court appropriately and correctly concluded that the state court had unreasonably applied *Batson* under section 2254(d)(1) based solely on the state court record, *Pinholster* is inapplicable."). In such instances, an evidentiary hearing may be ordered to develop the basis of the petitioner's constitutional claim, consistent with the requirements of 28 U.S.C. § 2254(e)(2). *Id.*

### B. Discussion

#### 1. Timeliness

As an initial matter, the R&R recommends overruling the State's objection that the Petition is untimely. The State offers no response.

Having carefully considered the matter, and in the absence of any objection, the Court hereby **APPROVES** the R&R's analysis of the timeliness of Petitioner's claims, and **ADOPTS** that analysis as the Court's opinion herein. The State's procedural objection is **OVERRULED**.

### 2.  Noncognizable claims

Next, the Court will dismiss two claims that are not cognizable in these proceedings. First, Petitioner asserts that he is "actually innocent" of issuing a worthless check exceeding $500 to the City of Baton Rouge because, in fact, the check at issue was written for just $60. (*See* Doc. 1 at p. 3). Petitioner's point is well-taken. Nonetheless, Petitioner's claim fails because "[t]he Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *see Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). Instead, "a credible showing of actual innocence" merely allows a prisoner to overcome a procedural default so that his underlying constitutional claims may be considered on the merits. *See Floyd v. Vannoy*, 894 F.3d 143, 154 (5th Cir. 2018) (quotation marks omitted).

Second, Petitioner asserts ineffective assistance of counsel based on sentencing counsel's failure to object to that portion of his sentence ordering him "to pay restitution on a crime [to which] he never pled [sic] guilty." Again, the Court is sympathetic to Petitioner's position. Section 2254, however,  expressly extends relief "only on the ground that [the petitioner] is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (emphasis added). "Petitioner's claim falls outside § 2254 because it relates only to court-ordered restitution, and not to his confinement," and Petitioner otherwise fails to show that "his release from state custody will be conditioned upon payment of restitution or … extended as a result of the restitution order." *Brown v. Vannoy*, No. 20-cv-01692, 2021 WL 1604297, at *1 (W.D. La. Mar. 24, 2021) (Whitehurst, M.J.), *report and*

*recommendation adopted* (W.D. La. Arp. 23, 2021); *cf. United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) ("A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes." (quoting *United States v. Michaud*, 901 F.2d 5, 7 (1st Cir. 1990)).

### 3. Unexhausted claims

Additionally, multiple claims in the Petition are not exhausted. As set forth above, the AEDPA's exhaustion requirement demands that Petitioner first present his constitutional claims "in each appropriate state court (including a state supreme court with powers of discretionary review)," thereby giving the State the first "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29. Here, Petitioner raised only one claim on direct appeal: his sentence is excessive under *Louisiana* law. (*See* Doc. 14 at p. 101). Plainly, whether Petitioner's sentence is excessive under state law is not a proper issue for consideration in federal habeas proceedings. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotation marks omitted)).

Thereafter, in his PCR proceedings, Petitioner raised multiple federal due process claims, (Doc. 14-2 at pp. 2-4); multiple federal IAC claims; and a federal excessive punishment claim, (*id.* at p. 8). Significantly, however, Petitioner did *not* pursue his due process claims *or* his excessive punishment claim to the Louisiana Supreme Court after they were dismissed by the district court on procedural grounds. (*See* Doc. 14-1 at pp. 110-128). Instead, Petitioner appealed *only* his IAC claims, after these claims were dismissed on the merits. (*See id.*). As such, only Petitioner's IAC

23

claims are properly exhausted, *Baldwin*, 541 U.S. at 29; *see also Mercadel*, 179 F.3d at 275 ("The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."). To the point, Petitioner's claims of a broken plea bargain and an involuntary plea in violation of Due Process (Claims 3 and 6), and an excessive sentence in violation of Plaintiff's right to be free from cruel and unusual punishment (Claim 4), are *not* exhausted and must be dismissed without prejudice to allow Petitioner to pursue them in state court first. *Mercadel*, 179 F.3d at 278.

### 4. Ineffective assistance of counsel claims

What remains are Petitioner's claims of ineffective assistance of counsel. The clearly established federal law at issue is *Strickland v. Washington* (and its progeny), holding that "[t]he Sixth Amendment requires effective assistance of counsel at [all] critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

Under *Washington*, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. 668, 686 (1984). Moreover, the Supreme Court has repeatedly emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, to the extent "that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Pinholster*, 563 U.S. at 189 (quoting *Washington*, 466 U.S. at 690).

To overcome that presumption, a petitioner must show that counsel's

performance was (1) objectively unreasonable and (2) prejudiced him as a result. *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020), cert. denied, 141 S. Ct. 824 (2020). The performance prong requires a showing "that counsel failed to act reasonably considering all the circumstances," bearing in mind that an overly "intrusive post-trial inquiry into attorney performance or … detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Pinholster*, 563 U.S. at 189 (quotation marks omitted). The prejudice prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks omitted). "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id.*

"Surmounting *Washington's* high bar is never an easy task." *Coleman*, 963 F.3d at 433 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "That is 'doubly' true when AEDPA deference applies," *id.*, because the Court must "take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" *Pinholster*, 563 U.S. at 190 (citations omitted). To prevail in such instances, the petitioner must demonstrate that it was "necessarily unreasonable for the [state court] to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence [in the outcome of the proceeding]." *See id.*

Again, in this federal forum, Petitioner asserts four cognizable IAC claims:

counsel was ineffective at the investigative and guilty plea stages of his criminal proceedings for (1) failing to adequately investigate Petitioner's criminal history,[2] (Doc. 5 at pp. 17-21), (2) misleading Petitioner "concerning sentencing exposure,"[3] (Doc. 1 at p. 4), and (3) allowing Petitioner to plead "guilty to crime [sic] though not guilty,"[4] (*id.*); and counsel was ineffective at sentencing for (4) allowing the "State to welch [sic] on [the] plea agreement,"[5] (Doc. 1 at p. 4).

The Louisiana Supreme Court disposed of *all* Petitioner's claims in a single sentence, stating: "Relator fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington.*" (Doc. 14-1 at p. 95). This terse dismissal fails to provide this Court any actual guidance regarding the reasoning underlying the Supreme Court's analysis of Petitioner's claims. Accordingly, the Court looks to the "last reasoned opinion"—the Commissioner's Recommendation of August 23, 2016—to determine whether the state courts' adjudication was unreasonable in light of clearly established federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

---

[2] This claim appears in Petitioner's PCR application, (Doc. 14-2 at p. 5), and again in his writ application to the Louisiana Supreme Court, (Doc. 14-1 at pp. 121, 124).

[3] This claim appears in Petitioner's PCR application, (Doc. 14-2 at p. 5), and again in his writ application to the Louisiana Supreme Court, (Doc. 14-1 at pp. 124-125).

[4] This claim appears in Petitioner's PCR application, (Doc. 14-2 at p. 6), and again in his writ application to the Louisiana Supreme Court, (Doc. 14-1 at pp. 116, 122, 124-125).

[5] This claim appears in Petitioner's PCR application, (Doc. 14-2 at p. 7), and again in his writ application to the Louisiana Supreme Court, (Doc. 14-1 at pp. 116, 121).

> a. **It was not "necessarily unreasonable" for the Commissioner to reject Petitioner's claims of ineffective assistance at the investigative and guilty plea stages**

For its part, the Commissioner's Recommendation is long on the procedural background underlying Petitioner's case—specifically, Petitioner's extensive history of missed appearances and absconding from justice—but short on legal analysis. After expressly acknowledging Petitioner's distinct claims that counsel failed to adequately investigate his criminal history, (Doc. 14 at p. 24), failed to advise "him on the maximum potential sentence," (*id.* at p. 23), and allowed him to plead guilty to a felony based on a misdemeanor offense, (*id.* at p. 24), the Recommendation essentially determines that these claims all fail because Petitioner cannot show that counsel's alleged errors affected sentencing—*i.e.*, Petitioner cannot show prejudice:

> As the First Circuit stated in its appellate opinion, Petitioner's sentence was well within the guidelines. The record shows that, even assuming arguendo, that one of these numerous bad check felony charges was in fact a misdemeanor, in view of these circumstances, in all likelihood the change would have had little bearing on the Court's sentencing of this individual. Here, Petitioner has not shown that [counsel's] performance was deficient or that the deficiency prejudiced his defense. Accordingly, this claim of ineffective assistance of counsel at the investigative and guilty plea stages] should be dismissed.

(Doc. 14 at p. 25).

Despite having failed to differentiate its reasoning as to *each* of Petitioner's claims, the Court still must presume that the Commissioner's Recommendation adjudicated each claim on the merits, thus triggering AEDPA deference. *Johnson v. Williams*, 568 U.S. 289, 293 (2013) ("[W]hen a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including

a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits."). And, applying the "doubly deferential" AEDPA IAC standard, this Court cannot say that it was "necessarily unreasonable" for the Commissioner to conclude that Petitioner failed to undermine confidence in the  outcome of his case. *Pinholster*, 563 U.S. at 190 (citations omitted).

First, Petitioner's claim that counsel did not adequately investigate his criminal history cannot succeed in light of the favorable plea bargain counsel negotiated on his behalf. Petitioner's basis for this claim is counsel's errant statement at the plea hearing that Petitioner "has one prior felony conviction." (Doc. 14-2 at p. 20). But even if counsel incorrectly believed that Petitioner had only one prior felony conviction (as opposed the three or four, *see Westley*, 2013 WL 595717 at *3 n.2), counsel nonetheless managed to shield Petitioner from Louisiana's habitual offender statute, La. R.S. 15:529.1, which would have significantly increased Petitioner's sentencing exposure. Additionally, and just as obvious, Petitioner's criminal history was just one factor the district court considered at sentencing. Indeed, the sentencing transcript is clear that an equally critical (and perhaps more important) factor in the district court's sentencing determination was Petitioner's continued deception and criminal conduct even *after* he pleaded guilty to the instant offenses, as well as his flight to Georgia to avoid sentencing.  (Doc. 14-2 at pp. 94-95).

Petitioner's complaint that counsel misled him regarding his sentencing exposure is equally flawed. Even assuming that counsel's performance was deficient,

the state court correctly concluded that counsel's deficiency did not likely prejudice Petitioner's case. After all, at Petitioner's plea colloquy, the district court expressly reviewed the elements *and* maximum potential sentences for each of the seven offenses to which Petitioner was pleading guilty. (Doc. 14-2 at pp. 24-26). Petitioner repeatedly affirmed under oath that he understood these penalties. (*See id.*). Additionally, Petitioner repeatedly affirmed his understanding that he was not guaranteed a specific sentence as a result of pleading guilty, and that "only [the court] decides what your sentence is going to be." (*See id.* at pp. 22-23).[6] Whatever Petitioner's current misgivings, it is clear from his contemporaneous sworn statements that he was adequately apprised of his sentencing exposure when he

---

[6] In light of Petitioner's sworn acknowledgments, it is clear that Petitioner's *real* complaint is that he was not expressly advised that his sentences might run consecutively. At least one district court in this Circuit has rejected essentially the same claim, explaining that "[b]ecause the imposition of consecutive sentences is a matter within the trial court's discretion, it is not definite or 'largely automatic' and, accordingly, not a direct consequence of a guilty plea which must be known to a defendant for their plea to be considered voluntary." *Rosenbusch v. Davis*, No. 18-cv-00371, 2018 WL 4705566, at *4 (W.D. Tex. Sept. 30, 2018) (Biery, J.). Further,

> there is no Supreme Court opinion holding that the cumulation of sentences is a direct consequence of a guilty plea that must be communicated to a criminal defendant for the plea to be considered knowing and voluntary. "'If a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough*, 541 U.S. at 666). If there can be "'fairminded disagreement'" on the question, as in this matter, the state court's decision must be affirmed. *Id.* at 427 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of federal law as established by the Supreme Court at the time of the state court decision, and the claim must be denied.

*Id.* The same analysis applies to Petitioner's claim here.

pleaded guilty to the instant offenses. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

More troubling is Petitioner's claim that counsel allowed him to plead guilty to four felony counts of issuing worthless checks exceeding $500 when, in fact, one of these counts should have been charged as a misdemeanor because it was based on a check for just $60. The Commissioner's analysis addressed this claim specifically, rejecting it because Petitioner's "sentence was well within the guidelines," and because "even assuming arguendo, that one of these numerous bad check felony charges was in fact a misdemeanor, in view of these circumstances, in all likelihood the change would have had little bearing on the Court's sentencing of this individual." (Doc. 14 at p. 25).

Again, applying "double deference," this Court cannot say that the Commissioner's assessment of prejudice was "necessarily unreasonable." *Pinholster*, 563 U.S. at 190. At sentencing, Petitioner's total exposure was 62 years imprisonment based on the seven felony offenses to which he pleaded guilty.[7] The district court ordered 50 years imprisonment, largely due to Petitioner's persistent criminal

---

[7] Consisting of 10 years imprisonment for felony theft exceeding $500, La. R.S. § 14:67(B)(1) (2006), *plus* 2 years imprisonment for felony theft between $300 and $499.99, La. R.S. § 14:67(B)(2) (2006), *plus* 10 years imprisonment for each of four counts of felony issuing worthless checks exceeding$500, La. R.S. § 14:71(C), *plus* 10 years imprisonment for forgery, La. R.S. § 14:72.

conduct and deception, as well as his flight to Georgia (as set forth above). Had Petitioner's worthless $60 check to the City of Baton Rouge been properly billed as an offense involving an amount less than $300, Petitioner *still* would have faced seven *felony* offenses—given his six prior convictions for writing bad checks, *see* La. R.S. § 14:71(E) (2006)[8]—and a total sentencing exposure of 54 years imprisonment.[9] A potential sentence of 54 years is still more than the 50 years Petitioner received.

Put differently, given Petitioner's conduct after entering his plea, it is reasonable to conclude that the ultimate outcome—a 50 year sentence—would likely be the same had the worthless $60 check been properly billed as a felony offense involving an amount less than $300. After all, the district court sentenced Petitioner to the 10-year statutory maximum for forgery, the 10-year statutory maximum for felony theft exceeding $500, *and* the 2-year statutory maximum for felony theft between $300 and $499.99. To reach the same 50-year sentence, the district court would merely have had to reconfigure Petitioner's four remaining sentences, perhaps by sentencing Petitioner to the 2-year statutory maximum for the worthless $60 check, followed by three consecutive 9-year sentences for the remaining offenses involving bad checks for amounts greater than $500.

---

[8] In light of his six prior convictions for issuing worthless checks, Petitioner is simply incorrect to assert that his Baton Rouge offense should have been billed as a misdemeanor. *See* La. R.S. § 14:71(E) (2006).

[9] Consisting of 10 years imprisonment for felony theft exceeding $500, La. R.S. § 14:67(B)(1) (2006), *plus* 2 years imprisonment for felony theft between $300 and $499.99, La. R.S. § 14:67(B)(2) (2006), *plus* 10 years imprisonment for each of three counts of felony issuing worthless checks exceeding $500, La. R.S. § 14:71(C) (2006), *plus* 2 years imprisonment for one count of issuing worthless checks less than $300 after having "been convicted of issuing worthless checks two or more times previously," La. R.S. § 14:71(E), *plus* 10 years imprisonment for forgery, La. R.S. § 14:72.

**b. It was not "necessarily unreasonable" for the Commissioner to reject Petitioner's claim of ineffective assistance at the sentencing stage**

Again, the Commissioner's analysis of Petitioner's sentencing-related claim is limited. The Recommendation acknowledges Petitioner's complaint that "the State was not held to its end of the bargain," (Doc. 14 at p. 25), but dismisses this claim on procedural grounds *and* the merits, stating:

> Complaints about sentencing as opposed to convictions are not proper grounds for post-conviction relief. Moreover, this claim also lacks merit. Although Petitioner claims that he was assured he would only get a two-year sentence, the trial court was abundantly clear **that it was undecided on what sentence it would impose based upon Petitioner's history**[.]

(Doc. 14 at p. 26 (emphasis in original)).

Here, again, Petitioner cannot show that the Commissioner's determination was "necessarily unreasonable." First, the Commissioner's ruling that this claim was procedurally barred on state-law grounds was likely correct, insofar as the Louisiana Supreme Court has expressly held that Louisiana Code of Criminal Procedure art. 930.3 "sets out the exclusive grounds for granting post-conviction relief, [and] provides no basis for review of claims of excessiveness or other sentencing error post-conviction." *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So. 2d 1172.

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989). As indicated above, Petitioner's *only* proffered cause for any procedural default is an unbriefed claim of ineffective state *post-conviction* counsel under

32

*Martinez v. Ryan*. (Doc. 5 at p. 13, n.8).

Even assuming that an unbriefed *Martinez* claim aimed at post-conviction counsel could somehow excuse Petitioner's default here, Petitioner's claim would still fail because the Commissioner's determination of the merits also was not "necessarily unreasonable." Petitioner complains that sentencing counsel "allowed [the] State to welch [sic] on plea agreement"—presumably by failing to recommend a two-year sentence at Petitioner's sentencing hearing (the State upheld its additional obligations to dismiss additional charges and refrain from seeking habitual offender status). But the same Judge that sentenced Petitioner also presided over his plea hearing—where the State's sentencing recommendation was discussed in detail. The transcript of Petitioner's plea hearing clearly sets forth the terms of the State's sentencing recommendation, and Petitioner's understanding that the State's "recommendation" was just that—a "recommendation" not a "guarantee." (Doc. 14-2 at p. 23). The transcript also makes clear that the Court fully intended "to listen" to the State's recommendation, but would ultimately be the sole decider of Petitioner's sentence. (*Id.*). Obviously, the Court remained aware of the State's recommendation at the sentencing hearing, and Petitioner was not likely prejudiced by the State's failure to repeat itself.

Finally, and in any event, there is absolutely no reasonable basis to believe that the outcome of Petitioner's sentencing hearing would somehow be different had the State repeated its recommendation of a two-year sentence, when Petitioner's mere *presence* at sentencing was secured only by coordinated intervention of

Louisiana, Georgia, *and* federal authorities after Petitioner escaped prison, skipped bond, absconded to Atlanta, and was arrested on new criminal charges.

## C. Certificate of appealability

A COA may issue only if a habeas petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "satisfies the burden under § 2253(c) by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (quotation marks and alterations omitted). "A claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* (quotation marks and alterations omitted).

Here reasonable jurists might disagree with this Court's dismissal of Petitioner's claim that counsel was ineffective for having allowed him to plead guilty to a count of issuing worthless checks in an amount greater than $500, based on a bad check written for just $60. Accordingly, the Court will grant a COA as to the following:

> Whether trial counsel was ineffective for having allowed Petitioner to plead guilty to one count of issuing worthless checks in an amount greater than $500, in violation of La. R.S. § 14:71(C) (2006), based on a bad check written for $60 to the City of Baton Rouge.

A COA will be denied as to all other claims raised in the Petition, because jurists of reason would not debate this Court's rejection of those claims.

## D. A note of caution to Petitioner's habeas counsel

As indicated at the outset, this is a remarkable case involving a harsh sentence.

34

But merely because a sentence is harsh does not make it unconstitutional. *See Harmelin v. Michigan*, 501 U.S. 957, 994–95 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history."). In his objection to the R&R, Petitioner's counsel frequently conflates a harsh result with an unconstitutional result, even going so far as to question the Court's integrity for taking a different view of the merits of Petitioner's claims, stating:

> And so now, this case is also about something else – whether this Court chooses to take part in and endorse the injustices of this case. It is an unspoken, ugly truth about our legal system that there is a myriad of ways to simply process through a claim of injustice like this if one is so inclined. The law provides us all that cloak if we choose to wear it.

(Doc. 24 at p. 3).

Counsel's unwarranted aside is gratuitous to any legal or factual argument, goes beyond the realm zealous advocacy, and implies misconduct by the Officers of this Court, and our State Court brethren. Counsel should not need to be reminded that recklessly impugning the integrity of a judicial officer is sanctionable under the Louisiana Rules of Professional Conduct.[10] La. Rules of Prof'l Conduct r. 8.2(a).

The Court will not go so far as to impose sanctions today, but cautions that such innuendo is improper and unprofessional and will not be tolerated.

### III.   CONCLUSION

Accordingly, having carefully considered the matter, and in the absence of any

---

[10] If counsel is genuinely concerned about this Court's conduct, appropriate procedures exist to raise the issue: http://www.ca5.uscourts.gov/rules-procedures/rules/judicial-misconduct-and-disability-rules. The same is true for any concerns counsel may have about the State Courts' conduct: https://judiciarycommissionla.org/Complaints.

objection from the State, the Court **APPROVES IN PART** the **Magistrate Judge's Report and Recommendation (Doc. 23)** and **ADOPTS** it as the Court's opinion regarding the timeliness of Petitioner's claims. In all other respects, the Court declines to adopt the R&R. Instead, Petitioner's claims will be dismissed for the reasons set forth herein.

In sum,

**IT IS ORDERED** that Petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2254 be and is hereby **DENIED**, and that this proceeding be and is hereby **DISMISSED**, as set forth herein.

**IT IS FURTHER ORDERED** that a certificate of appealability is granted as to the following issue only:

> Whether trial counsel was ineffective for having allowed Petitioner to plead guilty to one count of issuing worthless checks in an amount greater than $500, in violation of La. R.S. § 14:71(C) (2006), based on a check written for $60 to the City of Baton Rouge.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 17th day of August, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**